IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-CV-1018-MSK-NRN

DUMISAI H. HOCKADAY,

    Plaintiff,

v.

HELENE CHRISTNER,

    Defendant.

---

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment (**# 149**), the Plaintiff's Response (**# 153**), and the Defendant's Reply (**# 156**); and the Plaintiff's "Motion Presenting Competing Expert Opinions Previously Submitted" (**# 147**), the Defendant's Response (**# 150**), and the Plaintiff's Reply (**# 154**). For the reasons that follow, the Motion for Summary Judgment is granted and the other Motion is denied as moot.

## I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II. BACKGROUND[1]

At all relevant times, Plaintiff Dumisai Hockaday was an inmate at the Sterling Correctional Facility, operated by the Colorado Department of Corrections. On July 29, 2016,

---

[1] The Court recounts the facts in the light most favorable to Mr. Hockaday, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). To the extent that there are factual disputes, the Court notes them in its analysis.

Mr. Hockaday was attacked and injured by another inmate, suffering a broken right hand. He was treated by Nurse Nicole Stumpf at the Sterling clinic, who consulted via phone with Defendant Helene Christner, a nurse practitioner. Though NP Christner had the authority to refer inmates to a local emergency room, she did not refer Mr. Hockaday. As a result, Mr. Hockaday did not have a diagnostic radiology exam performed on his hand for 91 hours after the incident. He contends that the delay caused him excruciating pain, shortening and angulation of the bone, loss of grip strength, difficulty grasping, finger overlap, and stiffness.

Following the Court's order (**# 94**) at the dismissal stage, the Amended Complaint (**# 19**) alleges one claim for a violation of Mr. Hockaday's Eighth Amendment rights under 42 U.S.C. § 1983. It alleges that NP Christner was deliberately indifferent to Mr. Hockaday's medical needs by delaying treatment. NP Christner now moves for summary judgment (**# 149**).

### III.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a

2

court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

NP Christner moves for summary judgment on two grounds, first arguing that Mr. Hockaday did not exhaust his administrative remedies in CDOC's grievance process, and second arguing that there was no violation of Mr. Hockaday's constitutional rights. The Court discusses them in turn.

A.  **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) specifically requires prisoners to exhaust administrative remedies for claims brought under federal law with respect to prison conditions. 42 U.S.C. § 1997e(a).  It is well established that exhaustion is mandatory prior to bringing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The PLRA requires "proper exhaustion", which means the plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a lawsuit relating to the conditions of confinement.  *Woodford v. Ngo*, 548 U.S. 81, 85, 90–91 (2006)).  The PLRA imposes no specific procedural rules on the grievance process; rather, it is the prison's own grievance procedures that set forth what the prisoner must do to exhaust his or her administrative remedies.  *Jones*, 549 U.S. at 218.

NP Christner first argues that Mr. Hockaday failed to timely exhaust his administrative remedies.  The actionable event occurred on July 29, 2016, but no grievance was filed until October 6, beyond the 30-day period for doing so.  *See* CDOC Admin. Reg. § 850-04(IV)(F)(1)(a) (**# 149-6 at 8**).  The Supreme Court addressed this exact situation in *Woodford* and held that an untimely grievance bars a prisoner from proceeding to federal court.  548 U.S. at 93–96.

Mr. Hockaday concedes that he waited until October 6 to file his grievance.  (**# 153 at 3**.) This grievance was denied as untimely.  He contends that he was unable to complete a grievance due to his injury.  CDOC regulations allow for accommodations either through the assistance of other prisoners or through the ADA Inmate Coordinator.  *See* CDOC Admin. Reg. § 850-04(IV)(C)(3).  Mr. Hockaday does not offer any evidence that he sought any such

accommodation. The Court therefore finds that Mr. Hockaday failed to exhaust his administrative remedies before filing suit in this Court.

## B. Qualified Immunity

NP Christner also invokes the doctrine of qualified immunity. Qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Because of the underlying purposes of qualified immunity, the Court treats qualified-immunity questions differently from other questions on summary judgment. *See Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). After a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must: (1) show facts that "make out a violation of a constitutional right," and (2) establish that, at the time of the conduct at issue, it was clearly established under existing law that the defendant's conduct breached the constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address these questions in whichever order is best suited to the case. If the plaintiff fails to satisfy either prong of this inquiry, the Court "must grant the defendant qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001). However, if the plaintiff establishes the violation of a clearly established right, it becomes the defendant's burden to prove is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

For all practical purposes, the first question is indistinguishable from the inquiry that the Court would make in determining whether the Plaintiff has come forward with sufficient evidence to establish a *prima facie* claim in accordance with Rule 56. The plaintiff must show sufficient evidence to demonstrate the existence of a cognizable claim. The Court considers the

evidence in the light most favorable to the plaintiff and assesses whether it is sufficient to demonstrate the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The "clearly established" inquiry focuses on whether the contours of the constitutional right were so well-settled in the context of the particular circumstances, that a "reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas*, 607 F.3d at 669 (plaintiff bears the burden of citing to requisite authority). It is not necessary for the plaintiff to point to a case with identical facts, but he must identify some authority that considers the issue "not as a broad general proposition," but in a "particularized" sense — for example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, the court examines whether that constitutional principle has previously been found to prohibit particular conduct. *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198–200 (2004).

With these considerations in mind, the Court turns to Mr. Hockaday's claim that NP Christner was deliberately indifferent to his medical needs. The Court begins with a determination of whether a *prima facie* claim has been stated.

The Eighth Amendment requires prison officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmate's safety." *Barney v. Pulsipher*, 153 F.3d 1299, 1310 (10th Cir. 1998). It is well established that officials violate the

Eighth Amendment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, a claim based on an inadvertent failure to provide adequate medical care or alleging that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Rather, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006).

For a *prima facie* Eighth Amendment violation, an inmate must show both objective and subjective indifference to his medical needs. Objective indifference is demonstrated by showing that the inmate had a "sufficiently serious" medical need. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). Subjective indifference requires evidence that a defendant acted with a culpable state of mind; that is, with knowing or conscious disregard of the medical need or with recklessness. *Self*, 439 F.3d at 1230–31. An inmate may demonstrate a medical provider's culpable state of mind by presenting evidence that the provider knew of the inmate's serious medical condition (or such condition was obvious) but nevertheless delayed treatment, referral, or examination. Deliberate indifference does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005); *see also Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role. *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

As to the objective component, NP Christner does not contest that Mr. Hockaday had a serious medical condition. Rather, she contends that the delay in treatment did not cause Mr. Hockaday substantial harm. It is true that a delay "in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. In support, she proffers the declarations of two medical experts (## **149-8**, **149-10**) who reviewed Mr. Hockaday's chart, both of whom generally state that his injury was routine and only requires surgery in exceptional circumstances, and conclude that such circumstances were not present here. Mr. Hockaday, on the other hand, states that he continues to feel severe pain from his elbow to his hand. (**# 153 at 6**.) Viewing this factual dispute in the light most favorable to Mr. Hockaday as the Court must, a reasonable jury could find that the delay in treatment resulted in substantial harm.

The subjective standard, however, is not met. NP Christner states in her declaration:

> Based on my review of Mr. Hockaday's records, after my conversation with Ms. Stumpf, I believed that Mr. Hockaday's injury was not a medical emergency requiring an immediate x-ray or referral to the emergency room. According to Ms. Stumpf, Mr. Hockaday had good circulation, motor function, and sensation in his hand. While the hand was swollen, there appeared to be no need for an immediate x-ray. However, based on what Ms. Stumpf told me, I believed his hand needed to be x-rayed within seven days to determine the extent of its injury. . . .
>
> Example[s] of hand injuries requiring an immediate x-ray include injuries with compromised circulation, with a loss of tactile sensation, or with exposed bone.

(**# 149-12 ¶¶ 10–11**.) This statement, which documents NP Christner's belief that there was no substantial risk of serious harm in delaying an X-ray, is sufficient to show lack of subjective indifference. Mr. Hockaday offers no evidence to contradict NP Christner's statement of treatment, nor does he point to any symptom that would be probative of a substantial risk of serious harm. Instead, his argument is conclusory — NP Christner "refused to provide prompt medical care to Mr. Hockaday despite knowing that his hand was seriously injured and medical

8

care was indicated, and the failure to provide emergency care violates a clearly-established Eighth Amendment right". (**# 153 at 8**.)

Viewing this evidence in the light most favorable to Mr. Hockaday, no reasonable jury could find that NP Christner knew of and disregarded a substantial risk of serious harm. To the contrary, the evidence reflects that NP Christner considered Mr. Hockaday's injury and symptoms and found they did not constitute a medical emergency. Rather, Mr. Hockaday merely suggests a more preferable course of treatment. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (prisoners do not have an Eighth Amendment "right to a particular course of treatment"); *see also Estelle*, 429 U.S. at 107 (determining that a decision *not* to take an x-ray is, "[a]t most," medical malpractice that does not fall under the Eighth Amendment). Thus, Mr. Hockaday has failed to establish a *prima facie* claim of indifference against NP Christner for her conduct on July 29, 2016. Summary judgment in her favor is appropriate. As a result, the Court need not determine whether the law was clearly established.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 149**) is **GRANTED**. Judgment shall issue in favor of the Defendant. Having resolved the case, the Plaintiff's Motion Presenting Competing Expert Opinions (**# 147**) is **DENIED AS MOOT**.

Dated this 26th day of June, 2019.

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge

.